UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

    N-LIQUIDATION, INC., ET AL.

                              Debtors.

Chapter 11
Main Case No. 15-60823
Jointly Administered

---

NBT BANK, NATIONAL ASSOCIATION,

                              Plaintiff,

vs.

ONEIDA COUNTY DEPARTMENT OF FINANCE, ONEIDA COUNTY INDUSTRIAL DEVELOPMENT AGENCY, ONEIDA COUNTY TREASURER, ADIRONDACK CENTRAL SCHOOL DISTRICT, TOWN OF BOONVILLE, STEWART TITLE INSURANCE COMPANY, ADVANTAGE ABSTRACT COMPANY, INC. And MWD-LIQUIDATION, INC.,

                              Defendants.

Adv. Pro. No. 16-80003

---

APPEARANCES:

| | |
|---|---|
| Bond, Schoeneck & King, PLLC | *Stephen A. Donato, Esq.* |
| *Attorneys for Debtor/Defendant* | *Camille Wolnik Hill, Esq.* |
| One Lincoln Center | |
| Syracuse, NY 13202 | |
| | |
| Menter, Rudin & Trivelpiece, P.C. | *Jeffrey A. Dove, Esq.* |
| *Attorney for NBT Bank, National Association* | |
| 308 Maltbie Street, Suite 200 | |
| Syracuse, NY 13204 | |
| | |
| Saunders Kahler, L.L.P | *Merritt S. Locke, Esq.* |
| *Attorney for Oneida County Department of Finance* | |
| *Attorney for Oneida County Treasurer* | |
| 185 Genesee Street, Suite 1400 | |
| Utica, NY 13501 | |

Felt Evans, L.L.P                                                                                    *Anthony G. Hallak, Esq.*
*Attorney for Stewart Title Insurance Company*
4-6 N. Park Row
Clinton, NY 13323

Honorable Diane Davis, United States Bankruptcy Judge

# MEMORANDUM-DECISION AND ORDER

Plaintiff NBT Bank, National Association ("NBT") commenced this adversary proceeding on January 29, 2016, as a senior secured creditor of Debtor-Defendant MWD-Liquidation, formerly known as Millers Wood Development Corporation ("MWD"). Defendant County of Oneida ("Oneida County") filed the instant motion on October 3, 2017, seeking summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P") as incorporated in Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") (the "Motion," AP ECF No. 22).[1] On October 3, 2017, Oneida County also filed an Affidavit by Merritt S. Locke, Esq., counsel for Oneida County in support of the Motion (AP ECF No. 23), a Memorandum of Law in support of the Motion (AP ECF No. 24), and a Statement of Undisputed Facts (AP ECF No. 25). On November 7, 2017, NBT filed a Memorandum of Law in Opposition to Oneida County's Motion for Summary Judgment, which included its cross-motion for summary judgment (AP ECF No. 30), as well as a Response to Oneida County's Statement of Undisputed Facts (AP ECF No. 31).[2] A Reply Memorandum of Law was then filed by Oneida County on November 10, 2017. (AP ECF No. 34.) The Motion was heard at the Court's regular motion term in Utica, New York on November 14, 2017. After

---
[1] Documents filed in the adversary proceeding shall be referenced as ("AP ECF No. __"), whereas documents filed in the main chapter 11 case shall be referred to as ("ECF No. __").
[2] Alder Creek Beverages, LLC, ("Alder Creek") as purchaser of substantially all of Debtors' assets, also filed a Response to the Motion on November 7, 2017. (AP ECF No. 32.)

consideration of the parties' written submissions and arguments on November 14, 2017, the Court now makes the following findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7056.

*Jurisdiction*

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (K), (N), and (O), as well as the retention of jurisdiction clauses contained within the Court's November 24, 2015 (ECF No. 298) and December 23, 2016 (ECF No. 472) Orders. The Court's November 24, 2015 Order provided that, "[t]his Court shall retain jurisdiction to enforce and implement the terms of and provisions of this Sale Order, [and] all amendments or modifications thereto. . . ." The Court's December 23, 2016 Order stated that, "[t]he Court shall retain jurisdiction to hear and decide the cause of action asserted in the adversary proceeding titled NBT Bank, National Association vs. Oneida County Department of Finance, et al."[3]

*Facts*

The material facts of this case are largely uncontested and have been drawn from the parties' submissions and the Court's docket. On February 28, 2008, Oneida County received an Application for Real Property Tax Exemption filed by the Oneida County Industrial Development Agency ("OCIDA") with the Town of Boonville's Assessor requesting that five parcels of real property located in the Town of Boonville ("the Real Property") be granted a tax

---

[3] As reflected in their Answer to the Complaint as well as the Motion, the Oneida County Department of Finance and Oneida County Treasurer filed all their submissions jointly, collectively referring to themselves as Oneida County. Accordingly, this Memorandum-Decision and Order will do the same.

exemption in exchange for Debtor-Defendant MWD entering into a Payment in Lieu of Taxes Agreement ("PILOT Agreement"). Pursuant to the exemption application, the basis for the tax exemption was a leaseback agreement (the "Leaseback Agreement") executed between MWD and OCIDA. This Leaseback Agreement called for MWD, as holder of the Real Property in fee simple, to convey a leasehold interest to OCIDA with OCIDA then leasing the Real Property back to MWD. A Memorandum of Lease recording this transaction was filed in the Oneida County Clerk's Office on the same day the application was received. (AP ECF No. 22, Exhibit B.) The exemption application was granted shortly thereafter and as of March 1, 2008, the annual taxable status date for towns in Oneida County, the Real Property was declared exempt from general taxation in the Town of Boonville, starting with School taxes due for 2008-2009 and Town and County taxes due for 2009.

Beginning with the March 1, 2014 PILOT payment, MWD became delinquent on its PILOT obligations to the taxing jurisdictions. Despite remaining in default, OCIDA did not terminate its Leaseback Agreement with MWD until April 17, 2015, which was after the Town of Boonville's "taxable status date" of March 1, 2015 had already passed.[4] On April 29, 2015, counsel for OCIDA wrote a letter to the Town of Boonville's tax assessor informing him that OCIDA had terminated its Leaseback Agreement with MWD which also terminated the PILOT Agreement on April 17, 2015.[5] On April 30, 2015, OCIDA filed a Termination of Lease and Memorandum of Lease in the Oneida County Clerk's Office. (AP ECF No. 22, Ex. C.)

---

[4] Paragraph one of New York Real Property Tax Law § 302 states that "[t]he taxable status of real property in cities and towns shall be determined annually according to its condition and ownership as of the first day of March and the valuation thereof determined as of the applicable valuation date." N.Y. Real Prop. Tax Law § 302.
[5] Paragraph two of the PILOT Agreement contains the following language: "Anything herein to the contrary, notwithstanding, this Agreement shall terminate on the date on which the Leaseback Agreement shall terminate and

On June 3, 2015, MWD filed for chapter 11 relief in the Northern District of New York and was assigned Case Number 15-60826. The following day, the Court signed an Order directing joint administration of the MWD Bankruptcy with the chapter 11 bankruptcies filed by Nirvana, Inc. (Case No. 15-60823), Nirvana Transport, Inc. (Case No. 15-60824), and Nirvana Warehousing (Case No. 15-60825), with the Nirvana, Inc. case designated as the main case. (ECF No. 26.) On June 16, 2015, Debtors filed a motion to sell, among other things, the Real Property owned by Debtor MWD free and clear of all liens pursuant to § 363(f). (ECF No. 74.)

On June 22, 2015, Oneida County filed its Proof of Claim in the amount of $164,889.26, which set forth the 2014 and 2015 PILOT and non-PILOT amounts due and owing and listed its claim as fully secured by real estate taxes.[6] On August 17, 2015, Plaintiff NBT filed its Proof of Claim in the amount of $9,610,312.66 as fully secured by NBT's first priority mortgage encumbering the Real Property.

On November 24, 2015, the Court issued an order approving the sale of substantially all of the Debtors' assets, including the Real Property owned by MWD to buyer Alder Creek. (the "Sale Order," ECF No. 298.) As a condition to obtaining the financing needed to consummate the sale, Alder Creek's title insurance company, Stewart Title Insurance Company ("Stewart"), required assurance that certain claims arising under the pre-petition PILOT agreement between MWD and OCIDA were not now and could not be secured by liens on the Real Property sold

---

the Agency [OCIDA] shall terminate its leasehold interest in the Facility pursuant to the Leaseback Agreement." (AP ECF No. 22, Ex. A.)

[6] At the time the County filed its Proof of Claim, it did not have any information from the Town of Boonville tax assessor regarding the amount due and owing for the portion of 2015 tax year after OCIDA terminated the Leaseback Agreement. This was because, pursuant to New York Real Property Tax Law § 553, the Town of Boonville could not take action to account for what OCIDA and Oneida County believed to be the canceled PILOT Agreement until the annual tax reassessment date of March 1, 2016. Accordingly, Oneida County's Proof of Claim does not reflect the usual tax payments that it believed should have been assessed in the months following its termination of the Leaseback Agreement.

pursuant to the Sale Order. Accordingly, at the time of closing on December 30, 2015, MWD and Advantage Abstract Company ("Advantage"), as agent for Stewart, entered into a deposit agreement (the "Deposit Agreement") dated December 28, 2015. (AP ECF No. 1, Ex. A.) Pursuant to this agreement, an escrow account was created in the amount of $242,000.00 from the proceeds of MWD's § 363 sale to Alder Creek. These funds were to be held in escrow by Advantage pending a determination by the Court as to whether the delinquent PILOT payments were secured by liens on the Real Property and attached with priority over NBT's fully secured mortgage on the Real Property to the proceeds of the sale.[7] (AP ECF No. 1, Ex. A.)

On January 29, 2016, as a potential beneficiary in the escrowed funds, NBT filed the current adversary proceeding naming Oneida County and OCIDA as defendants. NBT's complaint seeks, inter alia, declaratory judgment that Oneida County's claims arising under the PILOT Agreement with MWD are not secured by a tax lien on the Real Property or the proceeds of the sale of the Real Property from MWD to Alder Creek and therefore should be disbursed to NBT. Subsequent to commencing the adversary proceeding, NBT entered into an agreement with Stewart and Oneida County, which altered the terms of the Deposit Agreement. (AP ECF. No. 20.) This new agreement, entitled Stipulation Replacing Escrow Agreement (the "Stipulation"), stated that $110,000.00 of the escrowed funds held by Advantage under the Deposit Agreement were to be transferred to the law firm of Bond, Schoeneck & King, PLLC as the new escrow agent. The remaining balance of the escrowed funds would then be released to NBT and Stewart

---

[7] Pursuant to the Sale Order, the transfer of the Real Property took place free and clear of all interests with any liens previously attached to the Real Property being transferred to the net proceeds of the sale. (ECF No. 298.)

and Advantage would be dismissed from the adversary proceeding. The Court entered an order approving the Stipulation on June 16, 2017, providing for the same. (AP ECF No. 21.)

Presently, Oneida County seeks an order declaring (i) the $110,000.00 currently held in escrow are subject to real property and school taxes from April 18, 2015 through December 30, 2015, representing the date from which Oneida County argues the PILOT agreement terminated to the date of the closing of Debtors' Real Property; and (ii) pursuant to the Sale Order authorizing the sale of substantially all of Debtors' assets, Oneida County's right to these unpaid taxes subordinates NBT's claims as a senior secured creditor.[8] In sum, Oneida County seeks an order from this Court giving it first priority over NBT to the escrowed funds as the holder of a valid tax lien on the Real Property before the closing of Debtors' § 363 sale.

*Arguments*

As stated in Attorney Locke's Affidavit, Oneida County concedes that MWD's unpaid PILOT payments for the years 2014 and 2015, which were due prior to the termination of the PILOT Agreement, are unsecured claims. (AP ECF No. 23.) Accordingly, this Memorandum-Decision and Order seeks only to address the narrow issue of whether MWD's tax exemption, as provided for in the PILOT Agreement executed between MWD and OCIDA, terminated on the same date that OCIDA terminated its Leaseback Agreement with MWD.

Oneida County argues that, in accordance with the terms of the PILOT Agreement, MWD's tax exemption ceased when OCIDA terminated its leasehold interest in the Real Property on April 17, 2015 and the prorated 2015 Town and County taxes and the 2014-2015

---

[8] Unless otherwise specified, all further section references are to Title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

School taxes immediately became due and owing as tax liens on the Real Property due to their non-payment.

In opposition to the current Motion and in support of its cross-motion for summary judgment, NBT contends that the termination of a leasehold interest cannot terminate the PILOT Agreement because the termination clauses in both the PILOT and Leaseback Agreements are in contravention of paragraph one of New York Real Property Tax Law ("RPTL") § 520, titled Assessment and Taxation of Exempt Property upon Transfer of Title. This provision provides that property shall be immediately subject to taxation and shall be taxed pro rata for the unexpired portion of any fiscal year during which a transfer of title was made to a non-exempt entity. *See* N.Y. Real Prop. Tax Law § 520. Based on the language of this statute, NBT asserts that the termination of a leasehold interest is not a transfer of title and therefore the Real Property should not be restored to the tax rolls until the Town of Boonville's next regular tax status date, which occurred on March 3, 2016, nearly three months after the closing of the Real Property. NBT submits that because MWD's School and Town and County tax obligations were not restored until the March 3, 2016 tax status date, Oneida County's tax lien could not have attached to the Real Property until after that date. Accordingly, it is NBT's position that between the April 17, 2015 termination date of the PILOT Agreement and the closing of MWD's § 363 sale on December 30, 2015, Oneida County held only an unsecured claim.

*Discussion*

Summary judgment is proper if the record "shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(A); FED. R. BANKR. P. 7056. Additionally, when considering a cross-motion for summary judgment,

a court must weigh the merits of each motion independently of the other. *McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41, 54 (Bankr. E.D.N.Y. 2016) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). Therefore, "[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Id*. at 54-55 (quoting *Pereira v. United States (In re Rodriguez)*, 50 B.R. 576, 579 (Bankr. E.D.N.Y. 1985)).

The parties agree that there is no genuine dispute as to any material fact involving the sole issue of whether the PILOT Agreement MWD executed with OCIDA terminated on the same date that OCIDA terminated its Leaseback Agreement with MWD. Accordingly, one of the two parties is entitled to judgment under the present posture of this adversary proceeding.

As argued by NBT, paragraph one of RPTL § 520 states in relevant part that "[w]henever any person, association or corporation not otherwise entitled to an exemption from taxation acquires title to real property which is exempt, in whole or part, from taxation, such property shall be immediately subject to taxation and shall be taxed pro rata for the unexpired portion of any fiscal year during which said transfer of title occurred…." N.Y. Real Prop. Tax Law § 520.

The outcome here rests on the Court's interpretation of this provision and the dispositive question of how broadly the New York Legislature intended to define the word "title" when it drafted RPTL § 520. If Oneida County's position is correct, the definition of "title" should be interpreted broadly and encompass, among other things, a leasehold interest. In contrast, if NBT's argument is correct, the word "title" should be construed narrowly to authorize only a true transfer of a fee simple interest in real property.

The Court notes at the onset that paragraph one of RPTL § 412(a) states, "[r]eal property owned by or under the jurisdiction, supervision or control of industrial development agencies enumerated in the general municipal law shall be entitled to such exemption as may be provided therein." N.Y. Real Prop. Tax Law § 412-a. This provision refers to § 874 of NY General Municipal Law, which provides that an industrial development agency ("IDA") "shall be required to pay no taxes or assessments upon any of the property acquired by it or under its jurisdiction or control or supervision or upon its activities." NY CLS Gen. Mun. § 874. When read together, these two provisions state that an IDA has the power to lease real property to another entity and that entity will in turn be given tax exempt status, provided the real property that is the subject of the lease agreement is either owned or is under the jurisdiction, control, or supervision of the IDA and conforms with the IDA's corporate purpose. Paragraph one of § 874 of NY General Municipal Law further provides that "the creation of the agency and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York and is a public purpose…." *Id*. In sum, these two statutes make clear that a payment in lieu of taxes agreement between an IDA and a private entity can be created by the transfer of a leasehold interest.

In this case and pursuant to the terms of the Leaseback Agreement executed between MWD and OCIDA, MWD conveyed a leasehold interest to OCIDA and OCIDA then leased the Real Property back to MWD. When the leasehold interest in OCIDA was created pursuant to the Asset Purchase Agreement, a concomitant tax exemption was also created. At that time, OCIDA "acquired" the Real Property, giving it jurisdiction, control, or supervision over the facility. Paragraph three and seven of the Leaseback Agreement also include language requiring MWD to

make the PILOT and non-exempt tax payments annually as they became due.[9] Paragraph seven further states that by reason of OCIDA's "ownership of the facility," MWD could only pursue certain rights as "agents of" OCIDA. Although a legal fiction, these sections lend support that a transfer of title was deemed to have occurred as argued by Oneida County. In doing so, the purpose of the Asset Purchase Agreement was realized, namely providing the public with various benefits addressed therein.

For these reasons, the Court finds that allowing a tax exemption to be created by conveying a leasehold interest, but not allowing it to be terminated when that same interest is transferred away from the entity charged with providing a public benefit would be an absurd result. Furthermore, allowing for a tax exemption to immediately terminate when an IDA ceases to have any interest in property is consistent with the policy objectives of the New York Legislature when it drafted General Municipal Law § 874. Specifically, paragraph one of § 874 provides that "the creation of the agency and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York and is a public purpose, and the agency shall be regarded as performing a governmental function in the exercise of the powers conferred upon it by this title…." NY CLS Gen. Mun. § 874. When the IDA as provider and facilitator of the exemption determines that a private entity is no longer providing a public benefit, it may immediately terminate the entity's tax exemption. Allowing for the immediate termination of a tax exemption when an IDA terminates its leasehold interest best serves the policy goals of this statute.

---

[9] Pursuant to paragraph 1(b) of the PILOT Agreement, special assessments and ad valorem taxes were not included in the tax exemption.

Article 14 of New York Real Property Law titled Property Condition Disclosure in the Sale of Residential Real Property further supports the notion that the Court should construe the definition of "title" to include a leasehold interest. Specifically, paragraph six of § 461 of that statute defines the phrase "transfer of title" as "delivery of a properly executed instrument conveying title to residential real property and shall include delivery of a real estate purchase contract that is a lease or installment land sale contract." N.Y. Real Prop. Law § 461. While this statutory definition is not found within the cited provisions of RPTL, the Court nevertheless finds the New York Legislature's definition of this phrase instructive. This provision makes clear that the word "title" can encompass more than a fee simple interest in real property, as the typical lease-purchase agreement conveys a leasehold interest in the subject real property with an option to purchase after the terms of the lease end. *See* 10 Warren's Weed New York Real Property § 101.11 (2018).

Finally, and by way of analogy, the Court finds persuasive the New York Department of Taxation and Finance, Office of Real Property Tax Service's published of counsel opinion interpreting, *inter alia*, whether the definition of "title," as stated in RPTL § 520, included tenant-shareholders of a cooperative apartment corporation. In that matter, counsel found that each tenant's shareholder interest in the cooperative was akin to having "title" for the purposes of being granted veterans and/or school tax relief (STAR) exemptions under the RPTL.[10] Further, when an exempt tenant sold his or her shares in the cooperative to a non-exempt tenant,

---

[10] Counsel cited RPTL § 425(2)(k)(i) when coming to this conclusion. This provision, read in the context of granting a STAR exemption, provides, "title to that portion of real property owned by a cooperative apartment corporation in which a tenant-stockholder of such corporation resides, and which is represented by his or her share or shares of stock in such corporation as determined by its or their proportional relationship to the total outstanding stock of the corporation, including that owned by the corporation, shall be deemed to be vested in such tenant-stockholder." N.Y. Real Prop. Tax Law § 425(2)(k)(i).

counsel found that "the legal fiction that a shareholder in a cooperative has 'title' to real property for purposes of qualifying for an exemption from real property taxation, by necessary implication, extends to the transfer of such 'title' by a sale of that shareholder's interest to a non-exempt 'owner'." Vol. 10 - Opinions of Counsel SBRPS No. 85. This opinion of counsel bolsters Oneida County's position that "title" should not be limited to fee simple ownership of real property.

*Conclusion*

Based on the foregoing, the Court finds that the term "title," as referred to in RPTL § 520, should be interpreted to include a leasehold interest. Therefore, the Court holds that when OCIDA terminated its leasehold interest in the Real Property owned by MWD, RPTL § 520 was triggered. Accordingly, by operation of paragraph one of RPTL § 520, MWD's tax exemption ceased when OCIDA terminated the PILOT Agreement, thereby making MWD immediately liable for the Town of Boonville's regularly assessed Town and County and School taxes from the April 17, 2015 termination date until the closing of MWD's § 363 sale on December 30, 2015.

Accordingly, in order for this Court to enter a separate order directing distribution of the escrowed funds as between Oneida County and NBT, Oneida County will need to file an amended Proof of Claim to include the post-termination taxes owed to it by MWD. Only then will the Court be able to enter a final judgment in this adversary proceeding.

14

Accordingly, it is hereby

ORDERED, that Oneida County's motion for summary judgment is GRANTED; and it is further

ORDERED, that NBT's cross motion for summary judgment is DENIED; and it is further

ORDERED, that Oneida County is directed to file an amended Proof of Claim to include the post-termination taxes due by MWD to Oneida County from April 17, 2015 to December 30, 2015, within 30 days entry of this Order.

It is SO ORDERED.

Dated: July 20, 2018
       Utica, New York

                                    /s/ Diane Davis_____
                                    DIANE DAVIS
                                    United States Bankruptcy Judge